TUCKER ELLIS LLP
MONEE TAKLA HANNA SBN 259468
monee.hanna@tuckerellis.com
515 S. Flower Street, 42nd Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

TUCKER ELLIS LLP
DUSTIN B. RAWLIN (*pro hac vice application forthcoming*)
dustin.rawlin@tuckerellis.com
950 Main Avenue, Suite 1100
Cleveland, OH 44113-7213
Telephone: 216.592.5000
Facsimile: 216.592.5009

Attorneys for Defendant MENTOR WORLDWIDE LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY ROSE and JACK G. ROSE;<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL NICCOLE, M.D., MENTOR WORLDWIDE, LLC and DOES 1-100, inclusive,<br><br>Defendants. | Case No. 22cv0158-LL-WVG<br><br>**DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1331, 1332, 1441, 1446 (DIVERSITY)**<br><br>*Filed concurrently with Declaration of Monee Takla Hanna]*<br><br>San Diego Superior Court Case No.: 37-2021-00046860-CU-PL-NC<br><br>Complaint Filed: November 4, 2021 |

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Mentor Worldwide LLC ("Mentor"), through undersigned counsel, hereby timely removes this case from the from the Superior Court of the State of California, County of San Diego to the United States District Court for the Southern District of California.

1

DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

As explained below, the United States District Court for the Southern District of California has original subject matter jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) and 1441, *et seq.* because complete diversity exists between Plaintiffs and all properly joined Defendants and it is facially apparent from the Complaint that the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]  As grounds for removal, Mentor states as follows:

## I. THE STATE COURT ACTION

48. On or about November 4, 2021, Plaintiffs Beverly Rose and Jack G. Rose ("Plaintiffs"), filed a Complaint captioned *Beverly Rose, et al. v. Michael Niccole, M.D., et al.*, Case No. 37-2021-46860-CU-PL-NC (the "State Court Action") in the Superior Court of California, County of San Diego.  The Complaint names as Defendants Michael Niccole, M.D. ("Dr. Niccole"), Mentor, and Does 1-100.

49. As required by section 1446(a), a true and correct copy of the Complaint in this action is attached as **Exhibit A** to the Declaration of Monee Takla Hanna ("Hanna Decl.").

50. Plaintiffs allege that Mentor manufactured MemoryGel textured breast implants ("MemoryGel Implants") that caused Ms. Rose to develop breast implant-associated anaplastic large cell lymphoma ("BIA-ALCL"). *See* Complaint ("Compl.") ¶ 1.

51. Plaintiffs allege that Dr. Niccole implanted Ms. Rose with the MemoryGel Implants in 1985. *See id.* ¶ 176.

52. Plaintiff Beverly Rose asserts five claims against Mentor for strict product liability—failure to warn, strict product liability—manufacturing defect, negligence, intentional misrepresentation and concealment, and negligent misrepresentation and

---

[1] By removing this action to this Court, Mentor does not waive any defenses, objections, or motions available under state or federal law.  Further, Mentor expressly reserves the right to move for dismissal of some or all of Plaintiffs' claims and/or seek dismissal on grounds of lack of personal jurisdiction, insufficient or improper service, improper venue, or forum *non conveniens.*

2
DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

concealment. *See id.* ¶¶ 195–280. In addition, Plaintiff Jack G. Rose, asserts one claim against Mentor for loss of consortium. *See id.* ¶¶ 281–85.

53. Plaintiffs purport to assert the same claims against Dr. Niccole. *See id.* ¶¶ 195-285) (asserting all causes of action against "Defendants").

## II. REMOVAL IS PROPER BECAUSE THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION PURSUANT TO 28 U.S.C. § 1332(a).

54. As more fully set forth below, this case is properly removed to this Court pursuant to 28 U.S.C. § 1441 because Mentor has satisfied the procedural requirements for removal and this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interest and costs.

### A. Complete Diversity Of Citizenship Exists.

9. Plaintiffs assert that Ms. Rose's implant surgery in 1985 occurred in California (*id.* ¶¶ 6–7, 176), that she received cancer treatment in California (*id.* ¶ 183), and her removal surgery occurred in California (*id.* ¶ 185). Based on these allegations, publicly available information, and Plaintiffs' counsel's representation as to Plaintiffs' citizenship, Plaintiffs are therefore citizens of the State of California for purposes of section 1332(c)(1).

10. Mentor is a limited liability company organized and existing under the laws of the State of Delaware. Mentor's sole member is, and was at the time the Complaint was filed, Ethicon, Inc. Ethicon, Inc. is, and was at the time the Complaint was filed, a corporation organized and existing under the laws of the State of New Jersey with its principal place of business in New Jersey. Accordingly, Ethicon is a citizen of New Jersey. A limited liability company "is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); *see also Hale v. Mastersoft Int'l Pty. LTD*, 93 F. Supp. 2d 1108, 1112 (D. Colo. 2000) (explaining that "courts . . . have uniformly held that a limited liability company is a citizen of the states of which its members are citizens, and is not a citizen of the state in which it

was organized unless one of its members is a citizen of that state[,]" and holding that limited liability company organized in Delaware, whose two members were Colorado citizens, was a citizen only of Colorado and not Delaware for purposes of determining whether diversity jurisdiction existed) (citing supporting authority).  Accordingly, for purposes of section 1332(c)(1), Mentor is a citizen of the State of New Jersey.

11. Dr. Niccole is a citizen of the State of California. *See* Compl. ¶¶ 6–7. Nonetheless, Dr. Niccole's citizenship may be disregarded and does not defeat jurisdiction under 28 U.S.C. §§ 1332 and 1441(b) because, as discussed more fully below, he is a sham defendant and has been fraudulently joined for the sole purpose of attempting to destroy diversity jurisdiction. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998); *see also infra* Part B.

12. Because Plaintiffs are citizens of California and Mentor is a citizen of New Jersey, diversity of citizenship exists under 28 U.S.C. § 1332.

### B. Dr. Niccole's Citizenship May Be Disregarded Because He Is Fraudulently Joined.

#### 1. Plaintiffs Make No Claims Against Dr. Niccole.

13. There is no reasonable basis for imposing liability on or stating a cause of action against Dr. Niccole.  Dr. Niccole is a sham Defendant fraudulently joined to this lawsuit because Plaintiffs do not make any substantive claims against Dr. Niccole. *See, e.g.*, *Brown*, 17 F. Supp. 2d at 1137 (finding defendants fraudulently joined where "no material allegations against [the defendants] are made"). All of Plaintiffs claims relate to the manufacture, labeling, and product warnings of the MemoryGel Implants. Plaintiffs do not—and cannot—allege that Dr. Niccole had any involvement with the manufacture of Mentor's MemoryGel Implants, nor do Plaintiffs allege that Dr. Niccole had responsibility for Mentor's product labeling or warnings.  Plaintiffs' Complaint lacks any plausible basis that Dr. Niccole acted in a manner that would subject him to any liability.

14. It is well-established that where a defendant is fraudulently joined, its citizenship may be disregarded for purposes of removal.  *See Ritchey v. Upjohn Drug Co.*,

4

139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. Gen. Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987).  A defendant is fraudulently joined if the plaintiff fails to state a claim against a resident defendant and cannot possibly recover against the party whose joinder is questioned.  *See United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002); *Kruso v. Int'l Tel. & Tel. Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989).

15. In evaluating such joinder, the court may "pierce the pleadings" and "[consider] summary judgment-type evidence such as affidavits and deposition testimony." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *Ritchey*, 139 F.3d at 1318 ("The defendant seeking removal to the federal court is entitled to present the facts showing the joinder to be fraudulent.").

16. In California, a cause of action does not exist where "there is no reasonable basis for imposing liability" and there is no possibility a plaintiff can state a cause of action against the resident defendant. *See TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1102 (C.D. Cal. 2002). In determining whether a removed claim is viable, a court's review of the complaint is limited to the facts actually alleged; "it does not extend to facts or causes of action that *could* be alleged via an amended complaint." *Pasco v. Red Robin Gourmet Burgers, Inc.*, No. 1:11–cv–01402–AWI–SKO, 2011 WL 5828153, at *3 (E.D. Cal. Nov. 18, 2011) (emphasis in original) (citing *Kruso*, 872 F.2d at 1426 n.12).

17. Plaintiffs have not stated any claim for relief against Dr. Niccole, and they demonstrate no real intent to obtain a judgment against him. First, the Complaint mentions Dr. Niccole only five times:

> (1) "Defendant Michael Niccole, M.D., was and is licensed to practice medicine in the State of California, and does practice medicine in this State." *Id.* ¶ 6.
>
> (2) "Upon information and belief, Defendant Michael Niccole, M.D. practices medicine at 1101 Bayside Drive, Suite 200 Corona Del Mar, California 92625." *Id.* ¶ 7.

  (3) "Had Defendants substantially complied with the PMA . . . Dr. Niccole would have learned of the risk of BIA-ALCL associated with Mentor Breast Implants and would have advised Plaintiff Beverly Rose to purchase a safer product." *Id.* ¶ 129.

  (4) "In 1985, Plaintiff Beverly Rose was implanted with Mentor MemoryGel textured breast implants. The implanting surgeon was Defendant Michael Niccole, M.D. *Id.* ¶ 176.

  (5) Mrs. Rose's plastic surgeon, Michael Niccole, M.D. did not warn Ms. Rose about the risk of BIA-ALCL with the use of the Breast Implants." *Id.* ¶ 178.

Given that Plaintiffs allege Mentor did not warn Dr. Niccole about the risk of BIA-ALCL with textured implants, *i.e.*, that he was unaware of the risk (which was true of everyone since no association was suspected until 26 years later, in 2011), none of these allegations purports to allege any wrongdoing on the part of Dr. Niccole. Failure to set forth specific factual allegations against Dr. Niccole is indicative of fraudulent joinder. *See, e.g.*, *Lyons v. Am. Tobacco Co., Inc.*, No. Civ. A 96-0881-BH-S, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30, 1997) (holding that there is "no better admission of fraudulent joinder of [the resident defendants]" than the failure of the plaintiff "to set forth any specific factual allegations" against them). To the extent Plaintiffs claim that Dr. Niccole is the "agent" or "alter ego" of Mentor (Compl. ¶ 16), such allegation is wholly conclusory and unsupported by the other facts alleged. Plaintiffs do not include any allegations demonstrating a unity of interest and ownership between Mentor and Dr. Niccole, nor do they explain how Dr. Niccole was allegedly involved or associated with Mentor. *See generally id.* Nor could they allege such facts.

  18. Second, the Complaint does not set forth any separate causes of action against Dr. Niccole. *See generally*, Compl. Plaintiff Beverly Rose asserts five causes of action against "All Defendants": strict liability – failure to warn, strict liability – manufacturing defect, negligence, intentional misrepresentation and concealment, and negligent misrepresentation and concealment. Each cause of action is based upon the allegation that

6
DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

the Mentor MemoryGel Implants implanted in Ms. Rose were defective and caused her pain and suffering. *See* Compl. ¶¶ 195–280. All of Plaintiffs' allegations relate to actions or inactions by Mentor, not Dr. Niccole. For example, even though Plaintiff alleges that "*Defendants'* promotional materials, labeling and instructional materials that accompanied the Silicone Textured Breast Implants were inadequate and misleading to consumers and prescribing physicians" (*id.* ¶ 198(b) (emphasis added)), in reality, this allegation relates only to Mentor. Despite using the word "Defendants," Mentor is the only Defendant that was responsible for providing labeling and instructional materials—not Dr. Niccole. If Dr. Niccole had any responsibility for the labeling and instructional materials, Plaintiffs would not have claimed that the materials were "misleading to . . . prescribing physicians." *Id.* Paragraph 198 is one of dozens of paragraphs that fail to allege any wrongdoing on the part of Dr. Niccole despite using the word "Defendants." *E.g., id.* ¶ 200 (claiming that "Defendants" had a "duty to monitor the product after premarket approval" even though only Mentor obtained premarket approval for the MemoryGel Implants and only Mentor had a duty to monitor post-approval).

19. Ultimately, Mentor is the only Defendant responsible for manufacturing and labeling the MemoryGel Implants, as well as the only Defendant required to report adverse events to the FDA. It is clear from the allegations that Plaintiffs' claims are not directed to Dr. Niccole *at all*. Plaintiffs cannot rely on general allegations directed toward "Defendants." *See, e.g., Brown*, 17 F. Supp. 2d at 1137.

20. Moreover, Plaintiffs cannot sue Dr. Niccole in products liability. A healthcare provider provides services; Dr. Niccole was not a manufacturer or distributor of Mentor's implants. He was a plastic surgeon placing them during a medical procedure (surgery). Under these circumstances, Plaintiffs cannot sue Dr. Niccole for products liability. *See, e.g., Carmichael v. Reitz*, 17 Cal. App. 3d 958, 979, 95 Cal. Rptr. 381, 393 (Cal. Ct. App. 1971) ("We, therefore, hold it inappropriate to impose liability without fault upon a medical doctor who prescribes a prescription drug as a medicine of his choice by applying the doctrine of strict products' liability merely because ingestion of the drug produced

7

1  untoward results."); *Hector v. Cedars-Sinai Med. Ctr.*, 180 Cal. App. 3d 493, 505, 225 Cal.
2  Rptr. 595, 599–600 (Cal. Ct. App. 1986) ("The essence of the relationship between hospital
3  and patient is the provision of professional medical services necessary to effect the
4  implantation of the pacemaker—the patient does not enter the hospital merely to purchase
5  a pacemaker but to obtain a course of treatment which includes implantation of a
6  pacemaker. As a provider of services rather than a seller of a product, the hospital is not
7  subject to strict liability for a defective product provided to the patient during the course
8  of his or her treatment." (Internal citations omitted)); *Gall v. Stryker Orthopaedics*, No. BC
9  504268, 2015 WL 12803806, at *4 (Cal. Super. June 25, 2015) ("Hernandez's role was
10 that of a physician providing professional care. There are no facts to suggest that there was
11 any impropriety in Hernandez's selection or use of the Device, which Device had
12 presumably been approved by the FDA, at the time the Device was implanted, or that his
13 representations were inconsistent with the representations and warranties made by the
14 manufacturer. Under such facts, allowing a claim for breach of express warranty would be
15 functionally indistinguishable from imposing strict products liability on Hernandez,
16 despite the fact that he was merely the treating physician. Such a claim would negate the
17 rule barring strict products liability claims against physicians."); *Ambriz v. CVS Pharm.,*
18 *Inc.*, No. 1:1-cv-01391, 2020 WL 1660018, at *4–6 (E.D. Cal. Apr. 3, 2020) (dismissing
19 product liability claim against pharmacy citing *Murphy v. E.R. Squibb & Sons, Inc.*, 40 Cal.
20 3d 672, 675-80 (1985)).  Plaintiffs must bring any claim against Dr. Niccole as a MICRA
21 professional negligence claim (which is time-barred as discussed below).
22       21.    Moreover, given that Plaintiffs have specifically alleged that Mentor did not
23 inform Dr. Niccole of the risk of BIA-ALCL associated with textured breast implants—
24 which would have been impossible given that no one suspected there was any association
25 until 2011—any claim for failure to warn, intentional misrepresentation or concealment,
26 or negligent misrepresentation is fatally flawed.  If Dr. Niccole was not aware of the risk,
27 he could not have failed to warn Plaintiffs of the risk; he could not have intentionally
28

8
DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

misrepresented or concealed the risk from Plaintiffs; and he could not have negligently misrepresented the risk to Plaintiffs. *See* Compl. ¶¶ 129, 198.

22. Notably, Dr. Niccole recently filed a demurrer to Plaintiffs' Complaint in state court. This demurrer asks the court to dismiss all claims against him for the same reasons stated above. A copy of Dr. Niccole's demurrer, including his memorandum of points and authorities, is attached hereto as **Exhibit B** to the Hanna Declaration.

### 2. Even if Plaintiffs' "allegations" against Dr. Niccole are construed as medical negligence claims, such claims are time-barred and subject to dismissal.

23. Even if Plaintiffs' five references to Dr. Niccole were somehow construed to assert a claim against Dr. Niccole, such claim would be for professional negligence, not product liability. "Professional negligence" is defined as a "negligent act or omission to act by a health care provider in the rendering of professional services, which act or omission is the proximate cause of a personal injury or wrongful death, provided that such services are within the scope of services for which the provider is licensed." Cal. Civ. Proc. Code § 364. All of the "allegations" about Dr. Niccole relate to his actions and/or omissions performing Plaintiff Beverly Rose's 1985 implant surgery. *See* Compl. ¶¶ 129, 176, 178.

24. The statute of limitations for professional negligence claims against a healthcare provider is three years after the date of injury or one year after a plaintiff discovers, or through the exercise of reasonable diligence should have discovered, the injury, *whichever occurs first*. Cal. Civ. Proc. Code § 340.5. Plaintiffs allege that Dr. Niccole performed Ms. Rose's implant surgery in 1985. Compl. ¶ 176. On April 28, 2016, Ms. Rose was diagnosed with ALCL and subsequently received chemotherapy. *Id.* ¶ 182–83. On November 4, 2019, Ms. Rose underwent a removal surgery of her breast implants to "try to ensure that the ALCL did not originate in her breasts." *Id.* ¶ 185. At that time, she "discovered there was a lot of silicone gelatinous oil in and throughout the breast tissue and breasts bilaterally." *Id.* In other words, the absolute latest date that Ms. Rose "discovered" her injury was on November 4, 2019 when she had her MemoryGel Implants

removed. Plaintiff did not file suit until November 4, 2021—two years after her removal surgery and one year after the professional negligence statute of limitations ran—likely why Plaintiffs have not even attempted to state a professional negligence claim here. Thus, Plaintiffs' professional negligence claims against Dr. Niccole are time barred under § 340.5.

25.  The "equitable tolling" section of Plaintiffs' Complaint does not toll the limitations period set forth in § 340.5. Despite using general "Defendants" language, Plaintiffs do not allege any fraudulent concealment by Dr. Niccole. *See* Compl. ¶¶ 189–94. Specifically, Plaintiffs claim "Defendants [Mentor] actively concealed . . . the true risks associated with Mentor Breast Implants." *Id.* ¶ 190. Notably, Plaintiffs claim that "medical professionals"—*i.e.*, professionals like Dr. Niccole—"could not have afforded to and could not have possibly conducted studies to determine the nature, extent and identity of related health risks." *Id.* ¶ 194. Plaintiffs also claim "*Defendants'* [Mentor's] promotional materials, labeling and instructional materials that accompanied the Silicone Textured Breast Implants were inadequate and misleading to consumers and prescribing physicians" (*id.* ¶ 198(b) (emphasis added)), in other words, Dr. Niccole was one of the "victims" of the alleged concealment. Thus, Plaintiffs are not entitled to equitable tolling of their claims against Dr. Niccole.

26.  Moreover, Plaintiffs do not allege that Dr. Niccole was even made aware of the risk of BIA-ALCL before Ms. Rose's implant surgery in 1985. *See generally* Compl.; *see also id.* ¶ 129 (alluding to fact that Dr. Niccole had not learned of risk prior to the 1985 implant surgery and therefore was unable to warn Ms. Rose of that risk). Nor could Plaintiff make such allegation, as nobody—not even the FDA—was aware of any association between breast implants and ALCL until 2011.[2] The FDA has acknowledged that even in

---

[2] *See* http://wayback.archive-it.org/7993/20171115053750/https://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/ImplantsandProsthetics/BreastImplants/ucm239996.htm (last visited February 2, 2022).

DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

2011, it "knew of so few cases of ALCL that it was not possible to determine what factors increased a patient's risk."[3]

27. Finally, upon information and belief, Plaintiffs did not give Dr. Niccole 90 days' prior notice of their intention to file this lawsuit in accordance with Cal. Civ. Proc. Code § 364. Although no particular form or notice is required, § 364 provides that "[n]o action based upon the healthcare provider's professional negligence may be commenced unless the defendant has been given at least 90 days' prior notice of the intention to commence the action." The Complaint does not include any statement certifying that Plaintiffs provided such prior notice to Dr. Niccole. Thus, Plaintiffs' claims against Dr. Niccole fail for this independent reason.

28. Accordingly, the citizenship of Dr. Niccole should not be considered for purposes of removal, as there is no cause of action against this fraudulently-joined party and he is merely added to defeat diversity jurisdiction.

C. **Alternatively, The Court May Sever The Claims Against Non-Diverse Defendant Dr. Niccole To Perfect Its Diversity Jurisdiction.**

29. This Court may sever the claims against Dr. Niccole under Rule 21 of the Federal Rules of Civil Procedure and retain jurisdiction over the remaining claims against Mentor. *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). It is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989) ("Almost every modern Court of Appeals faced with this issue has concluded that it has the authority to dismiss a dispensable nondiverse party by virtue of Rule 21.").

---

[3] https://www.fda.gov/MedicalDevices/ProductsandMedicalProcedures/ImplantsandProsthetics/BreastImplants/ucm239995.htm (last visited February 2, 2022).

30. When considering a severance under Rule 21, courts are guided by the factors in Rule 19. *See, e.g.*, *Sams*, 625 F.2d at 277 ("Rule 21 grants a federal district court or appellate court the discretionary power to perfect its jurisdiction by dropping a nondiverse party provided the nondiverse party is not indispensable to the action under Rule 19." (citing *Fidelity & Cas. Co. v. Reserve Ins. Co.*, 596 F.2d 914, 918 (9th Cir. 1979) and *Arnig*, 591 F.2d at 491)); *see also* 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure*, § 1685 (3d ed. 2001) ("Courts frequently employ Rule 21 to preserve diversity jurisdiction over a case by dropping a nondiverse party if the party's presence in the action is not required under 19.").

31. Under Rule 19, a court first must decide whether a party is necessary to the lawsuit under Rule 19(a). *See Mayfield v. London Women's Care, PLLC*, 2015 WL 3440492, at *3 (E.D. Ky. May 28, 2015). If the party is necessary, the court then will consider whether the party is indispensable under Rule 19(b). *See id.* If a nondiverse defendant is found to be unnecessary and indispensable, a court may sever the claims against that defendant even without determining that the party's joinder was otherwise improper. *See, e.g., Kelly v. Amylin Pharms., LLC*, 2014 WL 12496549, at *5, *7 & n.3 (S.D. Cal. Aug. 8, 2014) (citing *Sams*, 625 F.2d at 277 and *Elmore v. Merck & Co., Inc.*, 2007 WL 956893, at *5 (D. Nev. Mar. 29, 2007)).

32. Courts in this circuit routinely sever claims of nondiverse parties under Rule 21 after determining that they are dispensable under Rule 19. *See, e.g.*, *Louisiana Mun. Police Employees' Ret. Sys. v. Wynn*, 829 F.3d 1048, 1057 (9th Cir. 2016); *Cuviello v. Feld Entm't, Inc.*, 304 F. R. D. 585, 594 (N.D. Cal. 2015*); Cal. Energy Inv. Fund 1, LP v. Hu & Assocs.*, 2014 WL 12579790, at *2 (C.D. Cal. Jan. 30, 2014); *Nam Soon Jeon v. Island Colony Partners*, 892 F. Supp. 2d 1234, 1240 (D. Haw. 2012); *Denali Gen. Contractors, Inc., v. Liberty Mut. Grp., Inc.*, 2012 WL 12871817, at *1–2 (D. Alaska Mar. 19, 2012); *Bravo v. Kennedy*, 2011 WL 653989 (D. Or. Feb. 14, 2011). So do courts in other circuits. *See, e.g., Mayfield*, 2015 WL 3440492, at *3–4, *6 (severing diversity-destroying parties

12
DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

in medical device case after determining that they were not necessary parties under Rule 19(a)).

33. Here, Plaintiffs cannot plausibly argue that Dr. Niccole is a necessary party under Rule 19(a). Rule 19(a) requires in relevant part that a party be joined if the court cannot accord the remaining parties complete relief in that party's absence, or if the party claims an interest in the action and his absence will impede his ability to protect that interest. *See* Fed. R. Civ. P. 19(a). As stated above, Plaintiffs have not made any substantive allegations or claims against Dr. Niccole. All of their claims relate to action or inaction by Mentor. *See generally* Compl. The absence of Dr. Niccole from this action will in no way hamper Plaintiffs' ability to obtain whatever relief they believe they are entitled to from Mentor.

34. Because Dr. Niccole is not a necessary party under Rule 19(a), he cannot be deemed indispensable under Rule 19(b). *See Mayfield*, 2015 WL 3440492 at *5 (citing *Temple v. Synthes Corp.*, 498 U.S. 5, 8 (1990)). Nevertheless, it is clear that the requirements of Rule 19(b) are not met here. A judgment rendered in this case against Mentor would not prejudice Plaintiffs from bringing a separate professional negligence action against Dr. Niccole (although such an action is likely time-barred). *See* Fed. R. Civ. P. 19(b). There is also no risk of inconsistent rulings, as Plaintiffs' claims against Mentor involve product liability and their claims against Dr. Niccole involve medical negligence. If Plaintiffs still want to pursue their (time-barred) claims against Dr. Niccole, they can do so in state court.

35. In short, this Court should find that the joinder of Dr. Niccole is a sham, and it should sever him from this action. Upon severance, complete diversity will exist among Plaintiffs and Mentor (the only remaining defendant).

D. **The Amount in Controversy Requirement is Satisfied.**

33. Removal is proper under section 1446(c)(2)(B) if the Court finds, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, exclusive of interest and costs.[4]

34. Under section 1446(a), a defendant seeking to remove a case must include in its notice of removal "a short and plain statement of the grounds for removal." The Supreme Court has explained that "by borrowing the familiar 'short and plain statement' standard" from Rule 8(a) of the Federal Rules of Civil Procedure, Congress "intended to 'simplify the pleading requirements for removal' and to clarify that courts should 'apply the same liberal rules [to removal allegations] that are applied to other matters of pleading.'" *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547, 553 (2014) (quoting H.R. Rep. No. 100–889, p. 71 (1988) (internal quotation marks omitted)). To satisfy the "short and plain statement" requirement, the removal notice must allege the amount in controversy "plausibly" but "need not contain evidentiary submissions" to support the allegation. *Id.* at 551 (quoting *Ellenburg v. Spartan Motors Chassis Inc.*, 519 F.3d 192, 200 (4th Cir. 2008), for the proposition that "a removing party's notice of removal need not 'meet a higher pleading standard than the one imposed on a plaintiff in drafting an initial complaint'").[5]

---

[4] The preponderance of the evidence standard was announced in the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (the "Act"), Pub. L. No. 112-63, 125 Stat. 758. According to the House Report accompanying the bill, "circuits have adopted differing standards governing the burden of showing that the amount in controversy is satisfied. The 'sum claimed' and 'legal certainty' standards that govern the amount in controversy requirement when a plaintiff originally files in federal court have not translated well to removal, where the plaintiff often may not have been permitted to assert in state court a sum claimed or, if asserted, may not be bound by it." H.R. Rep. No. 112-10, at 15 (2011). Accordingly, "the defendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may simply allege or assert that the jurisdictional threshold has been met." *Id.* at 16.

[5] If a court questions a defendant's amount-in-controversy allegation, the court *must* give the parties an opportunity to present evidence relating to the allegation and only then decide whether the preponderance of that evidence shows that the amount in controversy is met.

35. In the Ninth Circuit, a removing defendant need show only that the amount in controversy "more likely than not" exceeds the jurisdictional minimum of $75,000.00. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Where, as here, the amount in controversy is not specified in the complaint, the court may consider the facts alleged in the complaint as well as in the notice of removal. *See Simmons v. PCR Tech.*, 209 F. Supp. 2d 1029, 1031 (N.D. Cal. 2002); *Del Real v. HealthSouth Corp.*, 171 F. Supp. 2d 1041, 1043 (D. Ariz. 2001). Here, it is facially evident from the Complaint that the amount in controversy exceeds $75,000.00, exclusive of interest and costs. *See Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

36. Plaintiffs' Complaint alleges that as a result of Defendants' conduct, Plaintiff "suffered debilitating physical pain and mental suffering, was/will be required to undergo additional surgeries and other procedures, incurred substantial hospital, medical, nursing and pharmaceutical expenses therefrom; suffered emotional distress, anxiety, depression and disability; loss of earnings; and loss of quality of life." Compl. ¶ 280. The Complaint specifically alleges that Ms. Rose was diagnosed with ALCL, underwent six rounds of chemotherapy, and underwent surgery to remove her breast implants. *Id.* ¶¶ 182–85. Plaintiff Jack Rose claims that "[a]s a direct and proximate result of the injuries caused to Plaintiff Beverly Rose by Defendants' tortious conduct, [he] suffered and will continue to

---

*See Dart*, 135 S. Ct. at 554 ("Evidence establishing the amount is required . . . when . . . the court questions[] the defendant's allegation."); *see also Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1199 (9th Cir. 2015) (same). In other words, a court may not *sua sponte* remand a removed case based on a deficient amount-in-controversy allegation before giving the defendant an opportunity to cure the alleged deficiency. *See, e.g., Ellenburg*, 519 F.3d at 194, 197–98; *Corporate Mgmt. Advisors, Inc. v. Artjen Complexus, Inc.*, 561 F.3d 1294, 1295–96, 1298 (11th Cir. 2009); *accord Smith v. Mylan Inc.*, 761 F.3d 1042, 1044 (9th Cir. 2014) (explaining that a district court has no authority to remand a removed action sua sponte based on a purported procedural defect in the notice of removal); *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1193 (9th Cir. 2003) (same); *Harmon v. OKI Sys.*, 115 F.3d 477, 479 (7th Cir. 1997) (explaining that failure to allege amount in controversy constitutes a "procedural defect" that does not undermine jurisdiction).

suffer the loss of his wife's consortium, companionship, society, intimacy, affection, services and support." *Id.* ¶285. Plaintiffs seek damages for past and future medical and incidental expenses, past and future loss of earnings and/or earning capacity, past and future general damages, loss of consortium damages, punitive and exemplary damages, prejudgment and post-judgment interest, and costs. *Id.* at "PRAYER FOR RELIEF" paragraph.

37. Therefore, analyzing the Complaint in a light most favorable to Plaintiffs while not admitting liability for any amount, the amount of damages alleged to be in controversy for Plaintiffs will reasonably exceed $75,000.00, exclusive of interest and costs. *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001) (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (finding that amount in controversy exceeded jurisdictional threshold because complaint alleged "damages for property, travel expenses, an emergency ambulance trip, a six day stay in the hospital, pain and suffering, humiliation, and her temporary inability to do housework")); *see also Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) (noting that the Ninth Circuit has "endorsed the Fifth Circuit's practice of considering facts presented in the removal petition as well as any summary judgment-type evidence relevant to the amount in controversy at the time of removal").

38. Moreover, reported verdicts and settlements in cases with damage allegations similar to this case have exceeded $75,000. *See, e.g.*, *Brazell v. Chadwick*, No. 2010-EV-011176-Y, 2014 WL 2567535 (Ga. Super., Fulton Cty., Jan. 24, 2014) (verdict of $125,000 for plaintiff who suffered disfigurement, tissue loss, and breast asymmetry and required implant removal after bilateral breast augmentation surgery); *Siravo v. Manstein*, No. 2008-24237, 2013 WL 5716741 (Pa. Com. Pl. July 19, 2013) (verdict of $175,000 for plaintiff who suffered breast disfigurement, scarring, embarrassment, and emotional distress after bilateral breast reduction surgery); *Waite v. Lincenberg*, No. 2010CV187413,

2011 WL 8002905 (Ga. Super., Fulton Cty., Sept. 22, 2011) (verdict of $170,000 for plaintiff who suffered disfigurement, pain, and emotional distress after bilateral breast reduction surgery); *Schwartz v. Terrasse*, No. 07 L 828, 2011 WL 4389420 (Ill. Cir. Ct., Lake Cty., June 21, 2011) (verdict of $425,000 for plaintiff who suffered disfigurement after bilateral breast reduction surgery); *Severance v. Landsman*, No. 4575/2006, 2011 WL 7461741 (N.Y. Sup., Suffolk Cty., May 17, 2011) (verdict of $1,250,000, including $500,000 for past pain and suffering and loss of enjoyment of life, for plaintiff who suffered breast disfigurement, scarring, embarrassment, self-consciousness and underwent several surgeries after an initial breast asymmetry surgery); *Ellsworth v. Elwood*, No. 06-L-115 (Peoria Cty., Ill. Apr. 7, 2009) (verdict of $330,000 for plaintiff who suffered breast disfigurement after a bilateral breast reduction surgery); *Swanson v. Pummill*, No. 07-87620 (Genesee Cty., Mich. April 3, 2009) (verdict of $364,000 for plaintiff who suffered breast disfigurement, pain, suffering, and mental anguish affecting her activities of daily living after surgery to remove breast implants); *Angela L. v. Saks*, No. YC056541, 2008 WL 6298055 (Los Angeles Cty., Cal. 2008) (settlement of $400,000 for plaintiff who suffered breast disfigurement after breast augmentation surgery); *Call v. Keiter*, No. 030903501, 2009 Jury Verdicts LEXIS 237703 (Weber Cty., Utah 2008) (verdict of $108,522 for plaintiff who, following a breast implant procedure, developed an infection requiring removal and replacement of the implant resulting in deformity); *Dicicco v. Cattani*, No. 11366/03, 2007 NY Jury Verdicts Review LEXIS 746 (N.Y. 2007) (verdict of $737,000, including $400,000 for past pain and suffering, for plaintiff who suffered breast disfiguring scarring and underwent multiple surgeries after an initial breast augmentation surgery); *Davis v. Rai*, No. 05-8226-G (Dallas Cty., Tex. 2007) (verdict of $165,000, including $100,000 for future pain and mental anguish, for plaintiff who suffered breast disfigurement and underwent multiple surgeries following an initial breast augmentation surgery); *Karachum v. Wasserstrum*, No. BER-L-3731-02, 2004 Jury Verdicts LEXIS 40368 (Bergen Cty., N.J. 2004) (verdict of $1,500,000 for plaintiff who suffered from permanent breast disfigurement after reduction surgery); *Raviv v. Tiller*, No.

00-11955 (Miami-Dade Cty., Fla. 2003) (verdict of $155,000 for plaintiff who experienced pain, breast disfigurement, and humiliation after initial breast augmentation); *Kelley v. Stromberg*, No. 00CC-001066 (St. Louis Cty., Mo. Apr. 17, 2002) (verdict of $300,000 returned for plaintiff who suffered breast disfigurement after reconstruction); *Allbritton v. Zachariah*, No. 768844 (Santa Clara Cty., Cal. July 28, 2000) (verdict of $186,200 increased by court to $226,072 to include interest and costs in breast disfigurement and multiple surgeries case); *Grimes v. Baxter Healthcare Corp.*, No. 93-8828-E (Dallas Cty., Tex. 1995) (verdict of $400,000 for plaintiff who suffered injuries due to rupture of breast implant, including pain, mental anguish, disfigurement, impairment, and medical expenses).  Although Mentor intends to vigorously defend the allegations in the Complaint, courts often look to jury verdicts in comparable cases to determine the amount in controversy. Copies of these verdict reports are attached as **Exhibit C** to the Hanna Declaration.

48. In addition, Plaintiffs seek punitive damages.  *See, e.g.*, Compl. ¶¶ 287–91.  "It is well established that punitive damages are part of the amount in controversy in a civil action."  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001).

49. In short, considering the nature of the injuries Plaintiffs allege and their request for compensatory and punitive damages, it is clear that the amount-in-controversy requirement is met.

## V. MENTOR HAS SATISFIED THE OTHER PROCEDURAL AND VENUE REQUIREMENTS FOR REMOVAL

50. This Notice of Removal is timely pursuant to 28 U.S.C. § 1446(b), which allows a defendant to remove a case within thirty days of receipt of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

51. Mentor Worldwide LLC was served on January 4, 2022.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

52. Because he is not a properly joined defendant, Mentor does not need the consent of Dr. Niccole to this removal, *see* 28 U.S.C. § 1446(b)(2)(A).

18
DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

53.	The Superior Court of California, County of San Diego is located within the Southern District of California.  *See* 28 U.S.C. § 84(c)(2).  Removal to this Court under section 1441(a) is proper because the Southern District of California is the "district and division embracing the place where such action is pending."

54.	In compliance with 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders received is attached as **Exhibit A** to the Hanna Declaration.

55.	Under 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served on Plaintiffs' counsel and a copy is being filed with the Clerk of the Superior Court of California, County of San Diego.

56.	Mentor reserves all defenses to Plaintiffs' claims.

ACCORDINGLY, Mentor removes this action and gives notice to Plaintiffs and to the Superior Court of California, County of San Diego, that the State Court Action shall proceed no further pursuant to 28 U.S.C. § 1446(d).

DATED:  February 3, 2022				TUCKER ELLIS LLP


						By:	/s/ *Monee Takla Hanna*
							MONEE TAKLA HANNA
							Attorneys for Defendant MENTOR WORLDWIDE LLC

19

DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL

CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On February 3, 2022, I served the following: **DEFENDANT MENTOR WORLDWIDE LLC'S NOTICE OF REMOVAL UNDER 28 U.S.C. § 1331, 1332, 1441, 1446 (DIVERSITY & FEDERAL QUESTION)** on the interested parties in this action by:

(X) **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Southern District ECF website, addressed to all parties appearing on the Court's ECF service list. A copy of the "Filing Receipt" page will be maintained with the original document in our office.

(X) **BY E-MAIL OR ELECTRONIC TRANSMISSION:** I caused the documents to be sent to the persons at the e-mail addresses listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

| | |
|---|---|
| Jennifer A. Lenze, Esq.<br>LENZE LAWYERS, PLC<br>1300 Highland Avenue, Suite 207<br>Manhattan Beach, CA 90266<br>E-Mail: jlenze@lenzelawyers.com;<br>mcgee@lenzelawyers.com<br><br>*Attorneys for Plaintiffs* | Robert W. Frank, Esq.<br>Marisa D. Sarti, Esq.<br>NEIL, DYMOTT, FRANK<br>MCCABE & HUDSON, PLC<br>110 West A Street, Suite 1200<br>San Diego, CA 92101<br><br>*Attorneys for Defendant*<br>*Michael Niccole M. D.* |

(X) I declare that I am employed in the office of the Bar of this Court at whose direction the service was made.

Executed on February 3, 2022, at Los Angeles, California.

/s/ Monee Takla Hanna
MONEE TAKLA HANNA
*Attorneys for Defendant*
MENTOR WORLDWIDE LLC

CERTIFICATE OF SERVICE